### Lester McKinney v. State.

#### No. 1304.   Decided October 25, 1911.

**Burglary—Evidence—Consent—Leading Questions.**

   Where it developed upon trial of burglary that the defendant was the grandchild of the wife of the party injured, and defendant claimed that he entered the house alleged to have been burglarized with the consent of the said grandmother, it was reversible error not to permit the defendant to ask the said grandmother whether defendant had authority or permission to go to said house and to enter it; these were not leading questions, nor was the answer thereto that the defendant had such permission, a conclusion of the witness.

Appeal from the District Court of Grayson. Tried below before the Hon. J. M. Pearson.

Appeal from a conviction of burglary; penalty, two years' imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—The appellant was indicted for burglary. The indictment charged that he burglarized the house of Louis Boyd with intent to steal. He was convicted, and his penalty fixed at two years confinement in the penitentiary.

The evidence developed that Louis Boyd's wife was named Harriet Boyd, and that appellant was her grandchild, and a step-grandchild of Louis Boyd. The State clearly proved that whatever breaking of Louis Boyd's house was had, it was without his consent. One defense of the appellant was, as appears from the record, that if he entered or broke the said house, he did so with the consent of his grandmother.

The court gave a very apt charge, clearly applicable to all the facts, and among them, this: "If you have a reasonable doubt whether or

not the defendant entered the house, as charged in the indictment, for the purpose of committing the crime of theft, you will acquit the defendant. Or, if you have a reasonable doubt whether or not defendant had the consent of Louis Boyd to enter the house, or if you have a reasonable doubt whether or not defendant had the consent of Louis Boyd's wife to enter said house, then in either event you will acquit the defendant."

It is, therefore, very apparent that if the appellant had the consent of his grandmother, Louis Boyd's wife, to enter the house, he would not be guilty of burglary, even though he might clearly be guilty of theft after the entry.

This bill of exceptions is the only one in the record, and relied upon and presented by appellant as reversible error. Omitting the formal and unnecessary parts, it is as follows:

"After the State had introduced its testimony in chief, the defendant placed Harriet Boyd upon the witness stand, and the following proceedings were had, questions being propounded on direct examination by defendant's counsel: Q. What is your husband's name? A. Louis Boyd. Q. How long have you been married? A. I don't really know. About ten years, I reckon; I think about ten years, nine or ten. Q. Do you know this boy (meaning defendant)? A. Yes, sir. Q. How long have you known him? A. All his life. Q. What kin is he to you? A. My grandson. Q. Did he ever live with you any? A. Yes, sir. Q. How much? A. He lived with us, with me, off and on all his life, till I married. Q. Has he been around your home any since then? A. Yes, sir. Q. Did he have your authority to come to your house? A. Yes, sir. Q. Any time he wanted to? A. Yes, sir. Counsel for the State: I object to that question as leading. The court: I sustain the objection. Q. State whether or not he had authority to come to your house? A. Yes, sir. Counsel for the State: I object to that question as leading and a conclusion of the witness, and move the court to strike out the answer of the witness. The court: Gentlemen, you will not consider that answer of the witness. Q. Did you object to his coming to your house? A. No, sir. I never did. I raised that boy up to this present moment. He has been around there all his life. Q. State whether or not you ever gave him permission to come to your house or go to your house? Counsel for the State: I object to the question as leading. The court: I think you are leading the witness. State what you said in reference to it. Q. Did you ever have any conversation about his staying away from your house and coming to your house? A. No, sir; never in my life; no, sir. Counsel for defendant: I don't know how to ask the question. The court: You may ask what was said in reference to it. Counsel for defendant: She stated she never said anything to him in reference to it. The court: Ask how he came to come there and when. Q. How come him to come to your house?

A.  He come because he wanted to, I reckon.  He knowed I was his grandma and he has been always with me all his life.  Q.  State whether or not he had your authority or permission to come to your house and come into your house whenever he wanted to?  Counsel for the State:  I object to that question as leading and calling for a conclusion of the witness.  The court:  I sustain the objection.  Q. Did you ever tell him to stay away from your house?  A.  No, sir; never in my life.  Q.  Did you ever say anything to him about coming to see you?  A.  Of course, I always tell him to come back and see me, like everybody else.

"The defendant, at the time of each of said rulings, excepted thereto. If the witness had been permitted to answer the question:  'State whether or not he had your authority or permission to come to your house and go into your house whenever he wanted to,' she would have answered 'yes.' "

It will be seen by this bill that, among others, this question was asked: "State whether or not he (meaning defendant) had authority to come to your (meaning Louis Boyd's wife) house."  This question was objected to as leading and a conclusion of the witness, and although answered by the witness, the State moved to strike it out, and the court, in effect, struck it out, and instructed the jury not to consider the answer.

The same objection was made and sustained again to this question: "State whether or not you ever gave him permission to come to your house or go to your house?"

Again to this question: "State whether or not he had your authority or permission to come to your house and come into your house whenever he wanted to?"  This was objected to by the State because leading and calling for a conclusion of the witness.  The court sustained the objection.  The bill, taken as a whole, clearly shows, that if the witness had been permitted to answer these question she would have answered in effect that the appellant had her permission and authority to go into her house whenever he wanted to.  Clearly, as we believe, the appellant ought to have been permitted to have asked and the witness to have answered these questions.  In our opinion, they were not leading as applicable to this case; neither were they calling for such a conclusion of the witness as to make them inadmissible on that account.

The State, by her assistant attorney-general, in this case, practically concedes that the appellant should have been permitted to have asked and had answers to these questions, and that because they were not permitted, reversible error was committed.

It may be that the jury, in view of the testimony by the State, would not have believed the grandmother of appellant, even if she had testified that he had her permission and authority to come to her house whenever he pleased, and to also enter it, yet it was a material inquiry

and defense by the appellant, and the testimony should have been permitted.

For this error, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*